## IN THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MARYLAND – NORTHERN DISTRICT

**KATHERINE AND CRAIG SCHIFFBAUER**,      *
Next Friends of K.S.
311 Lantana Drive                                                  *
Owings Mills, Maryland  21117

                                                    *

v.                                                              Case No.:  1:14-cv-02161-WMN
                                                    *

**Lawrence E. Schmidt, Esq.**                         **Jury Trial Requested**
President                                                         *
Board of Education for Baltimore County
6901 Charles Street                                         *
Towson, Maryland  21204

                                                    *

**S. Dallas Dance, Ph.D.**
Superintendent                                                *
Baltimore County Public Schools
6901 Charles Street                                         *
Towson, Maryland  21204

                                                    *

**Ms. Rebecca Rider, Principal**
Chatsworth Elementary School                        *
222 New Avenue
Reisterstown, Maryland  21136                      *

**Mr. David Mitchell**                                      *
Support Person
Chatsworth Elementary School                        *

**Trish Redding, Nurse**                                  *
Chatsworth Elementary School
                                                    *

**Shirille Jones, Teacher**
Chatsworth Elementary School                        *

**SERVE ON**                                        *

Lawrence E. Schmidt, Esq.                           *
President
Board of Education for Baltimore County             *
6901 Charles Street
Towson, Maryland  21204                             *
*     *     *     *     *     *     *     *     *     *     *     *     *

## AMENDED COMPLAINT

     Plaintiff, K.S., a minor and Next Friend of Katherine and Craig Schiffbauer, through counsel, James C. Strouse, Strouse Legal Services, alleges as follows:


**I.**     **Jurisdiction and Venue**

     1.     Jurisdiction over Plaintiff's federal law claims is founded upon 28 USC §1331 (federal jurisdiction) and 28 USC §1343 (a)(3) (federal civil rights jurisdiction).  All claims for violation of Plaintiff's rights under the laws and constitution are brought pursuant to 42 USC §1983.

     2.     Venue is proper in Maryland, Northern Division as both the Schiffbauers and Baltimore County Public Schools are located in Maryland and in the Northern Division venue.


**II.**     **Parties**

     3.     Paragraph 3 includes paragraphs 1 and 2 as if fully set forth herein.

     4.     Plaintiff, Katherine Schiffbauer is a resident Baltimore County, Maryland.  (311 Lantana Drive, Owings Mills, Md. 21117).  She brings this action on her own behalf and on behalf of her son, K.S., for whom she is Next Friend and Guardian.

     5.     Plaintiff, K.S. is a minor and a resident of Baltimore County, Maryland (311 Lantana Drive, Owings Mills, Md. 21117).

6.      Plaintiff, Craig Schiffbauer, is a resident of Baltimore County, Maryland (311 Lantana Drive, Owings Mills, Md. 21117), and guardian and Next Friend of his son, K.S.

7.      Defendant, Lawrence E. Schmidt, Esq. is President of the Board of Education for Baltimore County ("BCPS").  All actions taken by Mr. Schmidt were taken under color of state law and in the course and scope of his responsibility for BCPS.

8.      Defendant, Dr. Dallas Dance ("Dance") is Superintendent of the Board of Education for Baltimore County.  All actions alleged herein by Dr. Dance were taken under color of state law and in the course and scope of his responsibility for BCPS.

9.      Defendant, Rebecca Rider ("Rider") is the Principal of Chatsworth Elementary School.  All actions alleged herein by Rider were taken under color of state law and in the course and scope of her employment with the BCPS.

10.     Defendant, David Mitchell ("Mitchell") is a full-time employee of Chatsworth Elementary School of BCPS.  All actions taken by Mitchell were taken under color of state law and in the course and scope of his employment with BCPS.

11.     Defendant, Ms. Shirelle Jones ("Jones"), is a special education teacher at Chatsworth Elementary School.  All actions alleged here by Jones were taken under color of state law and in the course and scope of her employment with BCPS.

12.     Defendant, Trish Redding ("Redding") is a full-time nurse at Chatsworth Elementary School.  All actions taken by Redding were taken under color of state law and in the course and scope of her employment with BCPS.

13.     The BCPS is a public entity duly incorporated and operating under Maryland law as a school district.  Defendant, BCPS is a public entity subject to

Title II of the Americans with Disabilities Act of 1990, the requirements of the Rehabilitation Act of 1973.

14.     In enacting Title II of the Americans with Disabilities Act, Congress validly abrogated state sovereign immunity, and thus BCPS may be sued pursuant to Title II.  By accepting Federal Rehabilitation Act funds, BCPS waived its sovereign immunity under the Eleventh Amendment to claims brought pursuant to §504 of the Rehabilitation Act of 1973.

15.     Title VI of the Civil Rights Act provides that "a state shall not be immune under the Eleventh Amendment of the Constitution of the United States from suit in Federal Court for a violation of Title VI of the Civil Rights Act of 1964, or the provision of any other Federal statute prohibiting discrimination by recipients of Federal Financial assistance.  42 USC §2000d-7 (a)(1)

### III.   Facts Common to All Counts

16.     Paragraph 16 includes paragraphs 1 through 15 as if fully stated herein.

17.     K.S. was born on July 23, 2004 and has been diagnosed with an emotional disability (mood disorder NOS), A.D.H.D. (Attention Deficit Hyperactivity Disorder), O.C.D. (Obsessive Compulsive Disorder).

18.     K.S. was one of two Caucasian children left in the special education classroom at Chatsworth.  The other Caucasian child was moved because of Ms. Jones and C.G.'s bullying actions.

19.     C.G. is an African-American child who harassed and bullied K.S. When K.S. tried to retaliate, Mrs. Sherille Jones stopped him and sent K.S. to the support room where Mr. Mitchell is in charge.

20.     Sherille Jones is an African-American teacher.

21.     David Mitchell is an African-American Support Person assigned to Special Education classes at Chatsworth Elementary School.

22.     C.G. has been attacking K.S. at school on a continuing basis. Whenever K.S. seeks to retaliate, he is stopped by Mrs. Jones and sent to support.

23.     K.S. weighs approximately 76 lbs. and is 4 feet 5 inches in height.

24.     On May 23, 2014, C.G. was again attacking K.S. on the playground. When K.S. sought to retaliate, he was sent to support.

25.     Mr. David Mitchell physically restrained K.S. and took him to the quiet room.

26.     Mr. Mitchell continued to restrain K.S. even in the quiet room where a child is to be placed and left there until he calms down.  This is a standard protocol for all children deemed to be unruly.

27.     Mr. Mitchell, who is over 300 lbs. and over 6 ft. tall, continued to physically restrain K.S. in the quiet room.

28.     Restraining a child in the quiet room is against the procedural rules concerning restraint.  Once a child is in the quiet room, he is to be left alone.

29.     K.S. said he was slammed into a wall, and grabbed very hard causing bruises on his arms and back.

30.     Contemporaneous photos taken at Dr. Ferra's office that afternoon show the bruises caused by Mr. Mitchell.

31.     K.S.'s parent took him to their physician, Dr. Ferra, who saw the bruises and had K.S.'s mother,  Katherine Schiffbauer, call to report the child abuse to the Department of Social Services.

32.     The official school report of the situation says "I witnessed Mr. Mitchell utilizing the Tact-2 Seated Restraint…..I entered the quiet room as Mr. Mitchell was telling K.S. to calm down so he could release the hold.  At 12:58 p.m., Mr. Mitchell released the hold but K.S. became physically aggressive.  The

restraint resumed until 12:59 p.m.  The restraint ended at 1:00 p.m.  Mitchell released the restraint and sat with K.S. a few minutes as K.S. de-escalated."

33.     All of these actions happened after K.S. was placed in the quiet room when K.S. was supposed to be left alone.

34.     When K.S. was picked up early from school after the school nurse called and told Mrs. Schiffbauer she thought it was a good idea to come and get K.S. because he was so upset and had said he was having a hard time breathing and had some bruising.  K.S.  complained about Mr. Mitchell to his mother, Kathy Schiffbauer, walking to the car.

35.     Ms. Schiffauer examined K.S. closely and found multiple bruises on his arms and back.

36.     Ms. Schiffbauer immediately contacted her child's physician, Dr. Peter Ferra, who examined K.S. and found many bruises on K.S.'s arms and back.

37.     Ms. Schiffbauer contacted Social Services who called the school.  The nurse, Ms. Trish Redding, apparently told Social Services that K.S's injuries were a result of a struggle in restraint and that there was no issue of child abuse.

38.     Social Services did no investigation and did nothing until Dr. Peter Ferra made a formal complaint.

39.     Ms. Schiffbauer went to the police but the police declined to intervene saying it was a school matter.

40.     K.S. had always been eager to go to school and he enjoyed school.

41.     After the incident with Mr. Mitchell, K.S. became afraid of school and begged his parents not to send him to school.

42.     Mr. and Mrs. Schiffbauer were understandably upset in the change in K.S.'s attitude toward school.

43.     Because K.S. continued to have back and neck pain and was frightened and upset over the incident, the parents held K.S. out of school for two

(2) days May 27th and the 28th.  He returned to school on the 29th with a doctor's note.

44.    On May 29th Mrs. Schiffbauer went to Chatsworth and discussed the matter with the Principal, Ms. Rebecca Rider and the Assistant Principal.  Mrs. Schiffbauer pleaded that K.S. be kept away from C.G. and Mr. Mitchell.

45.    When K.S. went back to school after the incident, he was again placed in the Special Education class with Mrs. Jones, the "bully" C.G., and Mr. Mitchell, the support person.

46.    On  June 3rd at 4:41 Mrs. Schiffbauer was called by  Mrs. Rider to be told that her son K.S. was in support again due to an issue with another student.  When K.S. got home he informed Mrs. Schiffbauer it was yet again an issue with C.G.  Mrs. Ryder offered to move K.S. out of Special Education to a regular classroom upstairs with Ms. Thompson.

47.    Mrs. Schiffbauer sent Mrs. Rider a certified/restricted letter through U.S.P.S.  officially requesting the video surveillance material on May 23, 2014, the day K.S. was bruised and battered by Mr. Mitchell.  The response from Mrs. Rider was there was no footage for the areas requested.  This is very unusual since there are many cameras in the special education rooms.  The video surveillance tapes have never been given to K.S' parents.

48.    After Dr. Ferra contacted the Department of Social Services (DSS), a representative of DSS came out to the Schiffbauer's home to interview K.S. and the Mrs.Schiffbauer .  This happened on June 26, 2014.

49.    The school year concluded and K.S. no longer had to go to Chatsworth school.

50.    The representative of DSS promised to do a full investigation.

51.   Prior to May 23, 2014, the Schiffbauers did not suspect and had little reason to suspect that the BCPS was intentionally failing to provide a safe and fair educational opportunity for K.S.

52.   Craig and Kathy Schiffbauer are informed and believe, and therefore allege, that Mrs. Jones and Mr. Mitchell abused their son on previous occasions as well.

53.   The unreasonable, excessive, and unwarranted battery on K.S. caused him, and will continue to cause him, physical injury, pain, and emotional distress.

54.   BCPS employees compounded the injury by failing to promptly report it to K.S.'s parents or to responsible officials.

55.   It was only after Mrs. Schiffbauer called to DSS and badgered DSS to investigate that DSS opened an investigation.  Dr. Ferra's complaint helped to cause the investigation as well.

56.   When DSS called the school, the school nurse and other school officials said that nothing unusual happened and that K.S.'s injuries were minimal and normal for special education students.

57.   DSS closed the investigation and said it found no liability or cause for child abuse.

58.   Ms. Shirelle Jones, an African-American teacher, treated white students differently from African-American students.

59.   In particular, Mrs. Jones was very protective of C.G., an African-American student, who harassed and bullied K.S.

60.   When K.S. went to retaliate, Mrs. Jones would send K.S. to support and Mr. Mitchell, a 6'5" person weighing approximately 300 lbs. would "restrain" K.S.

61.   Mrs. Jones stepped down as a special educator and is moving to general education at another school due to an incident with another caucasion

student.  The issue with this student's removal from Mrs. Jones class was a few weeks prior to the incident with K.S.

62.    Upon information and belief, school officials knew or should have known that Mr. Mitchell was abusing K.S. and other children in Special Education.

63.    Upon information and belief, Mrs. Rebecca Rider, the Principal, Mrs. Trish Redding, the nurse, and Mrs. Shirelle Jones, K.S.'s teacher, all knew or should have known of Mr. Mitchell's abuse of K.S. and other children.  They should have reported Mr. Mitchell to those in authority at BCPS, the DSS, and the police, but failed to do so.

64.    On information and belief, K.S. and other children in Mrs. Jones' classroom were subject to a hostile educational environment based on their disability.  They were subject to verbal and other physical abuse, mainly from C.G. The verbal abuse caused intense fear and other psychological damage which continues to the present.

65.    As a further proximate result of  Defendants' actions as alleged herein, K.S. and others have suffered physical injuries, pain, emotional distress, and suffering.  In addition, Plaintiffs Craig and Kathy Schiffbauer have suffered emotional distress and suffering.

66.    The Defendants, Dance, Rider, Redding, Jones, Mitchell and BCPS's actions were malicious and in reckless disregard of Plaintiff's rights.

67.    As a further proximate result of Defendants' actions, Plaintiffs K.S., Craig Schiffbauer, and Kathy Schiffbauer have incurred and will continue to incur medical expenses.

68.    The Schiffbauers state that the defendants should be held personally liable for their actions and indifference to K.S.' injuries caused by Ms. Mitchell.

**COUNT I**     <u>**Violation of Constitutional Rights, 42 U.S.C. §1983, Plaintiffs v.**</u>
             <u>**All Defendants**</u>

69.     Paragraph 69 incorporates and re-alleges by reference paragraphs 1 through 68 as if they were fully stated herein.

70.     Defendant, David Mitchell, violated minor Plaintiff K.S.'s rights under the Equal Protection Clause of the Fourth Amendment to the United States Constitution by actions including, but not limited to, utilizing unjustified and unreasonable force against K.S. and others.

71.     Defendant, David Mitchell, violated minor Plaintiffs K.S. and others rights under the Equal Protection clause of the Fourteenth Amendment to the United States Constitution by actions, including but not limited to, depriving Plaintiffs of equal protection under the law on the basis of race.

72.     Defendants Schmidt, Dance, Rider, Redding, Jones, Mitchell, and BCPS violated K.S. and others rights under the Fourth Amendment to the United States Constitution by actions, including but not limited to, acting with indifference to the risk of harm to Plaintiff from David Mitchell.

73.     Defendants Schmidt, Dance, Mitchell, Rider Redding, and Jones violated Plaintiffs Craig Schiffbauer and Kathy Schiffbauer, K.S.'s and others rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution by actions, including but not limited to:

       a.     Intentionally interfering with the parent child relationship by concealing information regarding the physical and emotional trauma inflicted on K.S. and others by David Mitchell.

       b.     Intentionally interfering with Craig and Kathy Schiffbauer's, and K.S. and others right to provide and receive nurture, support, and comfort regarding a highly traumatic event.

74.  Their individual conduct violates clearly established constitutional rights that a reasonable person should know.  Certainly, Mr. Mitchell's infliction of bruises and cuts upon K.S. is just that knowledge of situations of which the defendants should know.

75.  There was continued inaction and indifference to Mr. Mitchell's obvious and reported child abuse.

76.  Ignoring such abuse indicates deliberate indifference by supervisors.

77.  The inaction by Mr. Mitchell's supervisors to take corrective actions was causally connected to K. S.' injuries in fact and proximately.

78.   As a proximate result of the violations alleged in paragraphs 16 through 81, Plaintiffs have suffered damages as alleged and to be proven by evidence.

79.  Liability in this context is not premised on respondent superior but in recognition that supervisory indifference or tacit authorization of subordinate's misconduct may be a causative factor in the constitutional injuries they inflicted on K. S., who was committed to their care.  **Orpiano v. Johnson**, 632 F.2d 1096, (4th Cir. 1980) cert. denied, 450 U.S. 929.

80.  The Schiffbauers allege that the supervisors' indifference amounts to a tacit authorization of the child abuse and not holding Mr. Mitchell responsible for his actions.

81.  The supervisors at Chatsworth showed this indifference in their handling of this matter and their refusal to hold Mr. Mitchell responsible for his actions against K. S.

**COUNT II**          **Discrimination in Violation of the Americans With**
                      **Disabilities Act**

82.      Plaintiffs K.S. and others incorporate and re-allege by reference in foregoing paragraphs 1 through 81, inclusive, as if they were fully set forth herein.

83.      The outer limits of liability in any given case are determined ultimately by pinpointing those persons in the decision-making chain whose deliberate indifference permitted the constitutional abuse to continue unchecked.

84.      Executive and administrative actions are not protected activities of government officials.  **Moxley v. Town of Waltersville**, 601 F. Supp 2d (4th Cir., Md. 2009).

85.      Government officials can be sued in their personal capacities.  Id. at 665.

86.      Effective January 26, 1992, Plaintiffs Craig Schiffbauer, Kathy Schiffbauer, and K.S. are entitled to the protections of the "Public Services" provision of Title II of the Americans with Disabilities Act of 1990.  Title II, Subpart A prohibits discrimination by any "public entity, including any state or local government, as defined by 42 USC §12131, section 201 of the ADA.

87.      Pursuant to 42 USC §12132, Section 202 of Title II, no qualified individual with a disability shall, by reason of such disability, be excluded from participation and denied the benefits of the services, programs, or activities of a public entity, or be subject to discrimination by any such entity.  Plaintiffs Craig Schiffbauer, Kathy Schiffbauer, and K.S. were at all times relevant herein a qualified individual with a disability as therein defined.

88.      BCPS has failed in its responsibilities under Title II to provide its services, programs, and activities in a full and equal manner to disabled persons as described herein above, including failing to ensure that educational services on an equal basis to children with disabilities and free of hostility toward their disability.

89.    BCPS has further failed in its responsibilities under Title II to provide its services, programs, and activities in a full and equal manner to disabled persons as described herein above by subjecting Plaintiff to a hostile educational environment.

90.    As a result of BCPS's failure to comply with its duty under Title II, Plaintiffs Craig Schiffbauer, Kathy Schiffbauer, K.S., and others have suffered damages including special and general damages according to proof.

91.  Mr. Mitchell, Ms. Rider, Ms. Redding, Ms. Jones were all active beyond their scope of responsibilities in allowing M. Mitchell's abuse of K.S.

92.  The harm was caused by the gross indifference to the safety of K.S.

93.  Therefore, the individual defendants are not immune from liability under the Cloverdell Teacher's Protection Act because of their abusive actions.

94.  There is no question that K. S. has a disability as established by his Individual Education Plan (IEP).

95.  K.S. was denied protection due him under his IEP through Mr. Mitchell's abuse of  K.S.

96.  K. S. was denied protection due to his disability because he was unable to protect himself.


**COUNT III        Violation of §504 of the Rehabilitation Act of 1973**

97.    Plaintiffs, Craig Schiffbauer, Kathy Schiffbauer, and K.S. incorporate and re-allege by reference foregoing paragraphs 1 through 96 as if they were fully set forth herein.

98.    Plaintiffs Craig Schiffbauer, Kathy Schiffbauer, and K.S. are informed and believe and therefore allege that BCPS is and has been at all relevant times the recipient of federal financial assistance and that part of that financial assistance has

been used to fund the operations, construction, and maintenance of the specific public facilities described herein and the activities that take place therein.

99.    By their actions or inactions in denying equal access to educational services by Defendant subjecting Plaintiffs, Kathy Schiffbauer and others to a hostile educational environment.  Defendant violated plaintiffs rights under §504 USC §794, and the regulations promulgated thereunder.

100.   As a result of Defendants' failure to comply with its duty under §504 of the Rehabilitation Act of 1973, 29 USC §794, and the regulations promulgated therein, Plaintiffs, Craig Schiffbauer, Kathy Schiffbauer, K.S., and others have suffered damages, including special and general damages according to proof.

**COUNT IV       Violation of Title VI of the Civil Rights Act of 1964**

101.   Plaintiffs Craig Schiffbauer, Kathy Schiffbauer, K.S., and others incorporate and re-allege by reference foregoing paragraphs 1 through 100, inclusive, as if they were fully set forth herein.

102.   Plaintiffs Craig Schiffbauer, Kathy Schiffbauer, K.S., and others are informed and believe and therefore allege that Defendants have, and have been at all relevant times, the recipient of federal financial assistance and that part of that financial assistance has been used to fund the operations, construction, and or maintenance of the specific public facilities described herein and the activities that take place therein.

103.   Plaintiffs Craig Schiffbauer, Kathy Schiffbauer, K.S., and others are informed and believe that they were specifically targeted and harassed by David Mitchell on the basis of their race.

104.   BCPS had actual notice that David Mitchell's harassment of Plaintiff K.S. was based on race.

105.    By failing to conduct an adequate investigation of known or suspected misconduct, BCPS exhibited deliberate indifference to the racial harassment of Plaintiff K.S. and others.

106.    BCPS's failure to promptly and appropriately respond to the racial harassment resulted in Plaintiffs K.S. and others being excluded from participation and being denied the benefits of, and being subjected to discrimination in BCPS' educational programs is a violation of Title VI.

107.    As a result of BCPS's failure to comply with its duty under §601 of Title VI of the Civil Rights Act of 1964, 42 USC §2000d, et seq., and its implementing regulations, Plaintiffs Craig Schiffbauer, Kathy Schiffbauer, K.S., and others have suffered damages, including special and general damages according to proof.


WHEREFORE, Plaintiffs pray for judgment as follows:

1.     Compensatory damages to Plaintiffs for injury, emotional distress, and medical expenses;

2.     Punitive damages against Defendants Dance, Rider, Redding, Jones, Mitchell and BCPS, and each of them;

3.     Attorney's fees and costs; and

4.     Such other and further relief as the court deems just and proper.

### **Jury Demand**


Plaintiffs hereby demand that this matter be tried to a jury.

15

Dated:  October 27, 2014

Respectfully Submitted,

/s/_____09557
James C. Strouse, Ph.D., J.D.
Strouse Legal Services
5401 Twin Knolls Road, Suite 7
Columbia, Maryland 21045
410-730-7600
410-964-9018  fax
sstrousejc@aol.com

## CERTIFICATE OF SERVICE

Replying to Defendant's Motion to Dismiss and rendering the original Complaint *Moot,* I HEREBY CERTIFY that on this 27th day of October, 2014, a copy of the foregoing Amended Complaint and a *Redlined* Copy thereof were sent via the Court's ecf system to:


Lisa Y. Settles, Esq.
Pessin Katz Law, P.A.
901 Dulaney Valley Road, Suite 400
Towson, Maryland  21204

Adam E. Konstas, Esq.
Pessin Katz Law, P.A.
901 Dulaney Valley Road, Suite 400
Towson, Maryland  21204


/s/   James C. Strouse  #09557_____

16