IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND


KATHERINE SCHIFFBAUER <u>et al.</u>      *
                                          *
                                          *
v.                                        *      Civil Action No. WMN-14-2161
                                          *
LAWRENCE E. SCHMIDT <u>et al.</u>         *
                                          *


    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *    *


<u>**MEMORANDUM**</u>


    Before the Court is a motion to dismiss filed by Defendant

Board of Education of Baltimore County (the Board)[1] and the

following Individual Defendants: Lawrence E. Schmidt, S. Dallas

---

[1] The Amended Complaint does not list any corporate entity in its
caption but avers that "BCPS is a public entity duly
incorporated and operating under Maryland law as a school
district." Am. Compl. ¶ 13.  The correct corporate and legal
name for the public school system in that school district is the
"Board of Education of Baltimore County."  <u>See</u> Md. Code Ann.,
Educ. § 3-104.  In Defendants' motion to dismiss the original
Complaint, Defendants informed Plaintiffs of the proper entity
to be sued but, for whatever reason, Plaintiffs did not correct
the error in the Amended Complaint.  In addition, the Court
notes some confusion in the manner in which Plaintiffs have
indicated how the Complaint has been amended.  Local Rule
103(6)(c) provides that a party filing an amended pleading
"shall file and serve (1) a clean copy of the amended pleading
and (2) a copy of the amended pleading in which stricken
material has been lined through or enclosed in brackets and new
material has been underlined or set forth in bold-faced type."
While Defendants have their own issues with the accuracy of the
redlined version submitted by Plaintiffs, <u>see</u> Mot. at 13 n.7,
the Court has found material in the redlined version that was
neither in the original Complaint nor in the Amended Complaint.
<u>See, e.g.</u>, ECF No. 26-1 ¶¶ 104-107 (which appear to be four
paragraphs at the end of Count III that, while marked as new
paragraphs, appear in neither the original Complaint nor the
Amended Complaint).  The Court will address the Amended
Complaint as it was actually filed, <u>i.e.</u>, ECF No. 26.

Dance, Rebecca Rider, David Mitchell, Patricia Redding,[2] and Shirelle Jones.[3] ECF No. 22. The motion is ripe. Upon review of the filings and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and that the motion will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Katherine and Craig Schiffbauer, through counsel, bring this action on behalf of themselves and on behalf of their son, K.S., for whom they are his Next Friends and Guardians. K.S. is currently ten years old and has been diagnosed with Attention Deficit Hyperactivity Disorder, Obsession Compulsive Disorder, and a mood disorder (not otherwise specified). At all times relevant, K.S. was enrolled in a special education class at Chatsworth Elementary School in Baltimore County, Maryland. Defendant Shirelle Jones, who is African American, was his teacher. K.S. is Caucasian and was the only Caucasian student left in the special education class after the other Caucasian student left, allegedly after being bullied by an African American student, C.G. Am. Compl. ¶ 18. It is further alleged that K.S. was also bullied by C.G. on a continuing basis but Jones was always very protective of C.G.

---

[2] Ms. Redding is identified in the Amended Complaint as Trish Redding but her legal name is Patricia Redding.

[3] Ms. Jones is identified in the Amended Complaint as Shirille Jones but Defendants identify her as Shirelle Jones.

Id. ¶ 59.  Plaintiffs also aver that Jones generally treated white students differently than African American students.  Id. ¶ 58.

Defendant David Mitchell was the Support Person assigned to K.S.'s classroom and is also African American.  On May 23, 2014, "C.G. was again attacking K.S. on the playground" and when K.S. "sought to retaliate," he was physically restrained by Defendant Mitchell and taken to the quiet room.  Id. ¶¶ 24-25.  While the procedural rules governing the restraint of students dictate that students are not to be restrained once they are in the quiet room, Plaintiffs assert that Mitchell continued to restrain K.S. even after he was placed there.  K.S. states he was "slammed into a wall, and grabbed very hard causing bruises on his arms and back."  Id. ¶ 29.

After K.S. "de-escalated," the school nurse, Defendant Patricia Redding, called Mrs. Schiffbauer saying she thought it would be a good idea for her to pick up K.S. early that day because K.S. was upset, was having a hard time breathing, and had some bruising.  Id. ¶¶ 32, 34.  When Mrs. Schiffbauer came to pick up K.S., she noticed multiple bruises on K.S. and took him immediately to their physician, Dr. Peter Ferra.  Dr. Ferra examined K.S., observed the bruises, and had Mrs. Schiffbauer call the Department of Social Service (DSS) to report potential abuse.  A representative of DSS called Nurse Redding and she

reported that the bruises were the result of a struggle restraining K.S., and not the result of abuse.  DSS did no further investigation at that time, although, at some point and at the insistence of Dr. Ferra, DSS did conduct some further investigation but found no liability or cause for child abuse. Id. ¶ 57.  Mrs. Schiffbauer also contacted the police but the police declined to intervene, saying that this was a school matter.  At some point, Plaintiffs also contacted the school in an attempt to obtain video surveillance tapes of the May 23rd incident but they were told that none existed, although Plaintiffs allege that there are many cameras in the special education rooms.

Mr. and Mrs. Schiffbauer kept K.S. at home for the next two school days but he returned to school, with his mother, on May 29th.  Mrs. Schiffbauer spoke with the school Principal, Defendant Rebecca Rider, and the Assistant Principal and pleaded that K.S. be kept away from C.G. and Mr. Mitchell.  Plaintiffs assert that request was ignored and K.S. was again placed in the special education class with Defendant Jones, C.G., and Defendant Mitchell.  On June 3rd, K.S. had another incident involving C.G. and K.S. was again placed in support.  Plaintiffs allege that throughout the remainder of the year, K.S. was afraid of school and begged his parents not to send him back.

Plaintiffs assert that, prior to the May 23, 2014, incident, Plaintiffs did not suspect or have reason to suspect that the Board was failing to provide K.S. with a safe and fair educational opportunity.  Since that time, however, they have come to believe that Defendants Jones and Mitchell abused K.S. on other occasions as well.  Id. ¶ 52.  Plaintiffs further assert, on information and belief, that "school officials knew or should have known that Mr. Mitchell was abusing K.S. and other children in Special Education," id. ¶ 62; that Defendants Rider, Redding, and Jones "all knew or should have known of Mr. Mitchell's abuse of K.S. and other children" and "should have reported Mr. Mitchell to those in authority at [the Board], the DSS, and the police, but failed to do so."  Id. ¶ 63.  Also on information and belief, Plaintiffs assert that K.S. and other children in Defendant Jones' classroom "were subject to a hostile educational environment based on their disability" and "to verbal and other physical abuse, mainly from C.G.," causing "intense fear and other psychological damage which continues to the present."  Id. ¶ 64.  They conclude that Defendants Dance,[4] Rider, Redding, Jones, Mitchell and the Board were "malicious

---

[4] Defendant Dance is the Superintendent of the Board and this is the only specific factual allegation referencing him in the Amended Complaint.  Defendant Lawrence Schmidt is the President of the Board and there are no specific factual allegations related to him.

and in reckless disregard of Plaintiff's (sic) rights." <u>Id.</u> ¶ 66.

On the basis of these allegations, Plaintiffs bring the following claims: Violation of Constitutional Rights under 42 U.S.C. § 1983, Count I; Discrimination in Violation of the Americans with Disabilities Act (ADA), Count II; Violation of § 504 of the Rehabilitation Act of 1973 (Rehabilitation Act), Count III; and Violation of Title VI of the Civil Rights Act of 1964 (Title VI), Count IV.  Defendants have moved to dismiss all claims against all Defendants.

**II. LEGAL STANDARD**

To survive a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 663 (2009) (quoting <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570 (2007)).  Such determination is a "context-specific task," <u>Iqbal</u>, 556 U.S. at 679, in which the factual allegations of the complaint must be examined to assess whether they are sufficient "to raise a right to relief above the speculative level." <u>Twombly</u>, 550 U.S. at 555.  "[A] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." <u>Nemet Chevrolet, Ltd. v.</u>

Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009)
(citations omitted).  Such deference, however, is not accorded
to labels and legal conclusions, formulaic recitations of the
elements of a cause of action, and bare assertions devoid of
further factual enhancement.  Iqbal, 556 U.S. at 678.

## III. DISCUSSION

### A. Section 1983 Claim

Section 1983 establishes a cause of action against any
"person" who, acting under color of state law, "subjects, or
causes to be subjected, any citizen of the United States or
other person within the jurisdiction thereof to the deprivation
of any rights, privileges, or immunities secured by the
Constitution and laws" of the United States.  42 U.S.C. § 1983.
Thus, to state a legally cognizable claim under Section 1983,
Plaintiffs "must establish three elements: (1) the deprivation
of a right secured by the Constitution or a federal statute; (2)
by a person; (3) acting under color of state law." Jenkins v.
Medford, 119 F.3d 1156, 1159-60 (4th Cir. 1997).

Defendants move to dismiss the § 1983 claim against the
Board on the ground that the Board is not a "person" within the
meaning of § 1983.  It is well established that county school
boards in Maryland are considered state agencies and that, as
state agencies, school boards are not considered "persons" under
§ 1983.  Mayo v. Bd. of Educ. of Prince George's Cnty., 797 F.

Supp. 2d 685, 689 (D. Md. 2011).  In opposing the motion,
Plaintiffs acknowledge that § 1983 is limited to claims against
"persons," but then makes no response to Defendants' argument.
See Opp'n at 9.  Instead, Plaintiffs cite a largely irrelevant
provision in the Maryland Code that conditionally waives the
defense of sovereign immunity under the Eleventh Amendment for
certain claims up to $100,000 against Maryland school boards.
Id. (citing Md. Code Ann., Cts. & Jud. Proc. § 5-518(c)).  While
that provision may waive immunity for certain claims once those
claims are established against a school board, Plaintiffs must
still first establish a valid claim.  Here, they cannot do so
because the Board is not a person subject to § 1983 liability.

Similarly, Defendants move to dismiss the claims against
the Individual Defendants to the extent that they are being sued
in their official capacities.  It is well established that, just
as State agencies are not persons under § 1983, nor are its
officials acting in their official capacities.  Rosenfeld v.
Montgomery Cnty. Pub. Schs., 41 F. Supp. 2d 581, 585-86 (D. Md.
1999).  Again, Plaintiffs respond with a largely irrelevant
argument relating to "bystander liability" under § 1983.  Opp'n
at 9 (citing Randall v. Prince George's Cnty., Md., 302 F.3d 188
(4th Cir. 2002)).  Bystander liability is simply a theory under
which supervisors can be held liable in their individual
capacities for the acts of their subordinates and this theory

has nothing to do with the viability of official capacity claims
against state actors.   In that same section of their Opposition,
Plaintiffs seem to concede that only individual capacity claims
can be brought against the Individual Defendants under § 1983.
Id. at 10 (citing Hafer v. Melo, 502 U.S. 21, 23 (1991) for the
proposition that "state official (sic) sued in their individual
capacities are 'persons' for purposes of 1983" and affirming
that Plaintiffs "do allege that the individual defendants should
be held personally liable for their actions and their
indifference to K.S.'s injuries caused by Mr. Mitchell").

As to the claims against the Individual Defendants in their
individual capacities, Defendants argue that they are entitled
to qualified immunity under Harlow v. Fitzgerald, 457 U.S. 800,
818 (1982), "'insofar as their conduct [did] not violate clearly
established constitutional rights of which a reasonable person
would know.'"   Mot. at 8.   Resolution of qualified immunity is
typically a two-part inquiry:

> First, [the court] must decide whether a
> constitutional right would have been violated on the
> facts alleged.   Next, assuming that the violation of
> the right is established, courts must consider whether
> the right was clearly established at the time such
> that it would be clear to an objectively reasonable
> officer that his conduct violated that right.

Cloaninger ex rel. Estate of Cloaninger v. McDevitt, 555 F.3d
324, 330-31 (4th Cir. 2009).   Furthermore, because qualified
immunity is an immunity from suit "rather than a mere defense to

liability; and like an absolute immunity, it is effectively lost
if a case is erroneously permitted to go to trial," Mitchell v.
Forsyth, 472 U.S. 511, 526 (1985), questions of qualified
immunity should be resolved "at the earliest possible stage in
litigation."  Hunter v. Bryant, 502 U.S. 224, 227 (1991).
"Unless the plaintiff's allegations state a claim of violation
of clearly established law, a defendant pleading qualified
immunity is entitled to dismissal before the commencement of
discovery."  Mitchell, 472 U.S. at 526.

    In addressing Plaintiffs' claims, Defendants appear to
place themselves in two different categories.  Defendants begin
their discussion of immunity in somewhat general, collective
terms, arguing that Plaintiffs have failed to demonstrate that a
constitutional right was violated.  See Mot. at 8-10.  This
portion of their argument would seem to apply more specifically
to those Defendants that had direct contact with K.S. –
Defendants Jones, Mitchell, and Redding.  Defendants then seem
to shift their focus and limit their argument to those in
supervisory capacities, opining, "[p]resumably, Plaintiffs seek
to hold the Individual Defendants liable under the theory of
supervisory liability."  Id. at 10.  In this portion of their
motion, Defendants only discuss the specific factual allegations
against Defendants Schmidt, Dance and Rider.  Id. 12-14.

Regarding that latter group of Defendants, the supervisors, Plaintiffs concede that they must "clear a very high bar" to establish liability.  Opp'n at 11.[5]  Establishing supervisor liability under § 1983 requires proof of the following elements:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; (2) that the supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices,"; and (3) that there was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.
>
> . . .
>
> Establishing a "pervasive" and "unreasonable" risk of harm requires evidence that the conduct is widespread, or at least has been used on several different occasions and that the conduct engaged in by the subordinate poses an unreasonable risk of harm of constitutional injury.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994) (citations omitted).

As to Defendants Schmidt and Dance, the Amended Complaint provides no factual basis, whatsoever, from which to conclude that they had knowledge of any pervasive or widespread

---

[5] This somewhat unusual concession may simply be the result of the manner in which Plaintiffs' counsel assembled the Opposition.  Of the 17 pages of the Opposition, 7 were simply copied from the Amended Complaint.  Of the 8 1/2 pages that constituted the "Argument" section, about half of the text was copied directly (but not always accurately, as noted below) from Defendants' motion.  The copied text included this concession.

unconstitutional conduct.  Plaintiffs provide specific factual
allegations regarding only a single incident of abuse and they
acknowledge that these Defendants "had no direct involvement in
the matter."  Opp'n at 13.  Although Plaintiffs allege that
Rider, Redding and Jones "should have reported Mr. Mitchell to
those in authority at [the Board]," they also allege that Rider,
Redding and Jones "failed to do so."  Am. Compl. ¶ 63.[6]

    As to Defendant Rider, she was informed about the May 23rd
quiet room incident.  Although Plaintiffs allege that she did
not immediately accede to Mrs. Schiffbauer's request that K.S.
be "kept away from C.G. and Mr. Mitchell," id. ¶ 44, when

---

[6] In their Amended Complaint, Plaintiffs cite to a Fourth Circuit
decision, Orpiano v. Johnson, 632 F.2d 1096 (4th Cir. 1980), as
the basis for their assertion of liability on the part of these
Defendants.  Am. Compl. ¶ 79.  In Orpiano, a § 1983 case brought
by a prison inmate alleging he was beaten by prison guards, the
Fourth Circuit held that "where prison supervisors with
knowledge of 'a pervasive and unreasonable risk of harm' to the
prisoners, fail to take reasonable remedial steps to prevent
such harm, their conduct may be properly characterized as
"deliberate indifference" or as "tacit authorization of the
offensive acts," for which they may be held independently liable
under § 1983.  Defendants observed in their Motion that Orpiano
was subsequently abrogated in part by the Fourth Circuit in a
1991 decision, Moore v. Winebrenner, 927 F.2d 1312 (4th Cir.
1991).  Completely ignoring this observation in their
Opposition, Plaintiffs again rely on Orpiano for the proposition
that liability can be based on "supervisory indifference."
Opp'n at 13.  The Fourth Circuit in Moore clarified that "the
'reasonable steps' language in Orpiano derives from a mere
negligence standard that has been repudiated by both [the Fourth
Circuit] and the United States Supreme Court, and that the
proper question is whether [the defendant] acted wantonly,
obdurately, or with deliberate indifference to the pervasive
risk of harm."  927 F.2d at 1315.

informed that K.S. had another issue with a student on June 3rd,
Plaintiffs acknowledge that she offered to move K.S. to another
classroom.  Id.  The Amended Complaint does not indicate how
Plaintiffs responded to that offer.  The school year ended
shortly thereafter.

In attempting to support their claims against Rider and the
other Defendants in their Opposition, Plaintiffs go well beyond
the allegations in the Amended Complaint and, at times, even
take positions counter to the allegations in the Amended
Complaint.  In the Opposition, Plaintiffs argue that "Principal
Rider said there were no surveillance cameras in the Special
Education room.  This was a deliberate misstatement showing her
bad faith and indifference to multiple injuries to K.S."  Opp'n
at 12.  What Plaintiffs allege in the Amended Complaint,
however, is that she simply said that "there was no footage for
the areas requested."  Am. Compl. ¶ 47.  Plaintiffs argue in
their Opposition that "Principal Rider refused to admit any
wrong-doing.  This is in spite of many bruises on K.S.' body.
Nurse Redding was either told to lie about K.S.' assault or
simply ignored her responsibilities to examine and report
abuses."  Opp'n at 13.  There is nothing in the Amended
Complaint, however, to support the conclusion that Rider ever
told Nurse Redding to lie.  Plaintiffs acknowledge in the
Amended Complaint that Nurse Redding told Mrs. Schiffbauer that

K.S. "had some bruising" when she called her to come pick up him up on May 23.

Similarly, Plaintiffs argue in the Opposition that "When DSS contacted Nurse Redding, she failed to report anything, saying K.S. reported to her but there was nothing special or incriminating about K.S.' injuries."  Opp'n at 12.  In the Amended Complaint, Plaintiffs acknowledge that Nurse Redding, when contacted by DSS, told them that "K.S.'s injuries were a result of a struggle in restraint and that there was no issue of child abuse."  Am. Compl. ¶ 37.  The factual allegations in the Amended Complaint would indicate that Defendants never denied that K.S. suffered bruising as a result of his struggle with Mitchell.

The Court cannot conclude that the allegations in the Amended Complaint support the conclusion that Principal Rider was deliberately indifferent to a pervasive risk of any constitutional harm.  The Amended Complaint provides factual support for a single incident of the use of limited physical force to restrain K.S.  Plaintiffs allege in the Amended Complaint that "when K.S. sought to retaliate" against C.G., Mitchell physically restrained him and took him to the quiet room.  The official school report, quoted in the Amended Complaint, describes an incident that lasted just a few minutes. The unidentified reporter stated,

14

> "I witnessed Mr. Mitchell utilizing the Tact-2 Seated
> Restraint . . . .  I entered the quiet room as Mr.
> Mitchell was telling K.S. to calm down so he could
> release the hold.  At 12:58 p.m., Mr. Mitchell
> released the hold but K.S. became physically
> aggressive.  The restraint resumed until 12:59 p.m.
> The restraint ended at 1:00 P.M.  Mitchell released
> the restraint and sat with K.S. a few minutes as K.S.
> de-escalated."

Am. Compl. ¶ 32.  While Plaintiffs assert that continuing to restrain a child once he is placed in the quiet room is against the school's procedural rules, id. ¶ 28, they do not challenge the accuracy of this report.

The Court also notes that Plaintiffs are not particularly clear as to the alleged constitutional dimension of their claim. In the Amended Complaint, Plaintiffs assert that Defendant Mitchell "violated minor Plaintiff K.S.'s rights under the Equal Protection Clause of the Fourth Amendment to the United States Constitution by actions including, but not limited to, utilizing unjustified and unreasonable force against K.S. and others." Am. Compl. ¶ 70.[7]  Plaintiffs then allege that Defendant Mitchell violated K.S.'s and others rights "under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution by actions, including but not limited to, depriving Plaintiffs of equal protection under the law on the basis of race." Id. ¶ 71.  Next, Plaintiffs allege that all of the Defendants violated:

---

[7] There is no "Equal Protection Clause" in the Fourth Amendment.

[Plaintiffs' and others'] rights under the Due Process Clause of the Fourteenth Amendment to the United States Constitution by actions, including but not limited to:

a. Intentionally interfering with the parent child relationship by concealing information regarding the physical and emotional trauma inflicted on K.S. and others by David Mitchell.

b. Intentionally interfering with Craig and Kathy Schiffbauer's, and K.S. and others right to provide and receive nurture, support, and comfort regarding a highly traumatic event.

Id. ¶ 73.

In their Opposition, however, Plaintiffs seem to abandon all but their equal protection claim on the basis of race. In the single paragraph under the heading, "Plaintiffs Do Adequately Allege the Deprivation of a Constitutional Right," Plaintiffs assert, "'[t]o survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus.'" Opp'n at 14 (quoting Townes v. Jarvis, 577 F.2d 543, 551 (4th Cir. 2009)).[8]  Plaintiffs then point to their allegations that Defendant Jones "treated white students differently from African-American students" and "was very protective of C.G., an

_____

[8] Plaintiffs cited "Torones v. Jarvis" but they clearly meant Townes v. Jarvis as this quote was copied from a portion of Defendants' motion in which the case was correctly cited.

16

African-American student." Id. (quoting Am. Compl. ¶¶ 58, 59 and 60).[9]

The Court notes that the only allegations of unequal treatment based on race now appear to be directed at Defendant Jones.  That unequal treatment consisted of sending K.S. to support when K.S. attempted to retaliate against C.G.  As to Defendant Mitchell, the Defendant most directly involved in the incident on which Plaintiffs focus, Plaintiffs do allege in their Amended Complaint that Mitchell deprived Plaintiffs of equal protection on the basis of race.  They assert in their Opposition, however, that K.S. "was attacked by Mr. Mitchell solely on the basis of K.S.' disability."  Opp'n at 16 (emphasis added).  There are no allegations of any unequal treatment by Nurse Redding on the basis of race.

"In order to survive a motion to dismiss an equal protection claim, a plaintiff must plead sufficient facts to demonstrate plausibly that he was treated differently from others who were similarly situated and that the unequal treatment was the result of discriminatory animus." Equity in Athletics, Inc. v. Dept. of Educ., 639 F.3d 91, 108 (4th Cir. 2011 (citing Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001) and Twombly, 550 U.S. at 560) (emphasis added).  At most,

---

[9] Actually, these quotes are found in paragraphs 58 and 59 of the Amended Complaint.

they are now alleging unequal treatment on the basis of race by just one of the Defendants, and even that allegation is somewhat conclusory, i.e., that Defendant Jones treated white students "differently" and was "very protective" of one particular African American student.  Regardless, nowhere in the Amended Complaint do they allege discriminatory animus on the part of Defendant Jones.

Considering the equal protection claim against Defendant Mitchell,[10] were the Court to ignore that Plaintiffs now attribute his conduct solely to K.S.'s disability and, therefore, no longer to K.S.'s race, the Court would still find Defendant Mitchell entitled to qualified immunity.  Mitchell restrained a student who, whether provoked by another student or not, was attempting to retaliate against that other student. When Mitchell released K.S. from restraint, he became physically aggressive and Mitchell restrained him again for a few minutes and then released him.  It is true that Plaintiffs allege that K.S. reported that he was slammed against a wall and grabbed very hard and Plaintiffs focus on the fact that K.S. experienced bruising.  That, however, is not inconsistent with what could occur when one is trying to restrain an unruly, physically

---

[10] As the Court noted above, in the Amended Complaint Mitchell is the only Defendant who was alleged to have deprived K.S. of equal protection on the basis of race.  See Am. Compl. ¶ 71.

aggressive student.   While Mitchell perhaps was or should have

been aware that his conduct violated standard school protocol, a

reasonable person in his position would not have known that this

conduct violated clearly established constitutional rights.[11]

## B. ADA and Section 504 of the Rehabilitation Act Claims

In the Amended Complaint, Plaintiffs cite Moxley v. Town of

Walkersville, 601 F. Supp. 2d 648 (D. Md. 2009),[12] apparently in

support of an argument that the Individual Defendants could be

held liable under the ADA and the Rehabilitation Act.   Am.

Compl. ¶ 84.   The portion of the Moxley decision referenced by

Plaintiffs deals with the scope of legislative immunity and the

case was not brought under either the ADA or the Rehabilitation

Act.   Thus, it has no relevance.   Regardless, Plaintiffs

acknowledge in their Opposition that there is no individual

---

[11] In addition to qualified immunity, Defendants argued that they
were entitled to immunity under the Paul D. Coverdell Teacher's
Protection Act, 20 U.S.C. § 6731 (Coverdell Act).   Mot. at 14-
15.   Plaintiffs responded, without any legal citation, that the
Coverdell Act "does not protect Principals and School Officials
with immunity unless they follow school rules and procedures."
Opp'n at 14.   Although Plaintiffs are correct that the immunity
provided under the Coverdell Act is limited, that limitation
applies to "misconduct for which the defendant has been found to
have violated a Federal or State civil rights law."   20 U.S.C. §
6736(d)(1)(C).   Because the Court finds that Defendants either
did not violate such a law or were otherwise entitled to
qualified immunity, it need not further address the scope of
protection under the Coverdell Act.

[12] Plaintiffs actually cite, "Moxley v. Town of Waltersville, 601
F. Supp 2d," without a page reference and incorrectly attribute
the case to the Fourth Circuit.

liability under either statute.  Thus, these claims against all
but the Board must be dismissed.

There is the potential for the Board to be liable under the
ADA or the Rehabilitation Act.  Title II of the ADA provides, in
pertinent part: "Subject to the provisions of this subchapter,
no qualified individual with a disability shall, by reason of
such disability, be excluded from participation in or be denied
the benefits of the services, programs, or activities of a
public entity, or be subjected to discrimination by any such
entity."  42 U.S.C. § 12132.  Section 504 of the Rehabilitation
Act provides, in pertinent part: "No otherwise qualified
individual with a disability . . . shall, <u>solely by</u> reason of
her or his disability, be excluded from the participation in, be
denied the benefits of, or be subjected to discrimination under
any program or activity receiving Federal financial assistance .
. . ." 29 U.S.C. § 794(a) (emphasis added).

Although there is a difference in the causation language
used in these statutes, the elements are essentially the same:
"[I]n the context of a student excluded from an educational
program, to prove a violation of either [the ADA or § 504], the
plaintiff must establish that (1) he has a disability, (2) he is
otherwise qualified to participate in the defendant's program,
and (3) he was excluded from the program on the basis of his
disability."  <u>Halpern v. Wake Forest Univ. Health Sciences</u>, 669

F.3d 454, 461 (4th Cir. 2012).[13]  It is undisputed that K.S. has

a disability and the Court will assume he was otherwise

qualified to participate in the special educational program

offered at Chatsworth Elementary.

In the Amended Complaint, Plaintiffs allege that the Board

failed in its responsibility to provide him the educational

opportunities to which he was entitled "by subjecting Plaintiff

to a hostile educational environment."  Am. Compl. ¶ 89.  In the

brief discussion of facts in support of this claim, Plaintiffs

cite the attack by Defendant Mitchell "solely on the basis of

K.S.' disability" and Defendant Rider's and Redding's cover up

of that alleged abuse.  Opp'n at 16.  Plaintiffs then declare

that "[i]n Davis v. Next Friend LaShonda D. v. Monroe County

Board of Education, 526 U.S. 629 (1999), the Supreme Court has

held that a school district's deliberate indifference to

pervasive, severe disability based harassment that affects a

student's access to school resources would be actionable."  Id.

(emphasis added).

Davis was actually a case addressing a sex-based, hostile

environment claim brought under Title IX of the Education

---

[13] Reflecting the difference in the causation language of the two
statutes, the Fourth Circuit has set out the third element as
"[his] disability was a motivating factor in [his] exclusion
from the benefit (Title II) or the sole reason for [his]
exclusion from the benefit (§ 504)."  Shepard v. Irving, 77 F.
App'x 615, 622 (4th Cir. 2003).

Amendments of 1972 (Title IX), 20 U.S.C. § 1681 et seq.  In that

context, the Court held that a Title IX claim against the school

board for student-on-student harassment could be maintained upon

a showing that school officials were "deliberately indifferent

to sexual harassment, of which they [had] actual knowledge, that

is so severe, pervasive, and objectively offensive that it can

be said to deprive the victims of access to the educational

opportunities or benefits provided by the school." Davis, 526

U.S. at 650.  In the case before it, the Court found that the

plaintiff had stated a claim under Title IX because school

officials were aware that another student was sexually harassing

and assaulting the plaintiff, and yet did nothing to stop the

harassment for five months.  See Davis, 526 U.S. at 653–54.

　　　Several courts, including this Court, have found by analogy

to Davis,

> that a school district's deliberate indifference to
> severe and pervasive harassment of a disabled child by
> his peers states a claim under § 504 of the
> Rehabilitation Act and Title II of the ADA, when five
> elements are satisfied: (1) the child is an individual
> with a disability; (2) he or she was harassed based on
> that disability; (3) the harassment was sufficiently
> severe or pervasive that it altered the condition of
> his or her education and created an abusive
> educational environment; (4) the defendant had actual
> knowledge of the harassment; and (5) the defendant was
> deliberately indifferent to the harassment.

Wright v. Carroll Cnty. Bd. of Educ., Civ. No. 11-3103, 2013 WL

4525309, at *16 (D. Md. Aug. 26, 2013) (collecting cases).

22

While Plaintiffs' citation to <u>Davis</u>, a student-on-student harassment case, renders Plaintiffs' intent somewhat unclear, the Court will assume that Plaintiffs are asserting a disability harassment claim based upon the conduct of Jones and Mitchell as well as the alleged bullying by C.G.

Even with that assumption, the Court finds that the allegations in the Amended Complaint fail to present harassment that was sufficiently severe or pervasive that it altered the condition of K.S.'s education.  As to C.G.'s conduct, the Amended Complaint speaks in general terms of his attacking and bullying K.S. "on a continuing basis," without specifying the duration or intensity of that bullying.  As to Jones' conduct, as noted above, the allegations are that she treated students "differently" based upon race, not disability.  As to Mitchell, as also noted above, Plaintiffs point to a single instance of the use of physical force to restrain K.S. when K.S. sought to retaliate against C.G.

This Court's ruling in <u>Wright</u> is perhaps instructive.  In <u>Wright</u>, the Plaintiffs' son, R.W., suffered from autism and they alleged that from the beginning of his fifth grade school year he was bullied by M., another student.  Despite his mother telling school officials of her son's fear of that other student and their assurance that they would appropriately deal with the situation, their son "[n]evertheless, endured cruel and 'serious

23

episodes of student-on-student violence' inflicted by M.,
including being 'stabbed at or struck with pencils, being pushed
and punched, [and] being ridiculed for the affect and mannerisms
which are the effect of his disability.'" Id., at *3 (quoting
the complaint).  In one incident, seven or eight weeks into the
school year, M. "attacked," "threatened," "taunted,"
"ridiculed," and "assaulted" R.W., and when R.W.'s mother
arrived at the school, she "observed that R.W. had 'withdrawn
into a tightly wound fetal position.'" with "'both of his eyes
were blackened and his lower lip was swollen.'" Id.  As a
result of these attacks, R.W. "became extremely afraid to attend
school." Id. at *4.  Even under those facts, this Court held
that the plaintiffs had not met the "severe and pervasive"
standard given the "exceedingly brief period of harassment" and
granted the defendants' motion to dismiss. Id. at *17.
Plaintiffs' nonspecific allegations regarding C.G.'s bullying
certainly do not meet that standard.

     If the Court also considers the May 23rd incident involving
Mitchell, we are still only dealing with a single incident of
very limited duration.  Plaintiffs' vague allegation that they
"are informed and believe . . . that Mrs. Jones and Mr. Mitchell
abused their son on other occasions as well," Am. Compl. ¶ 52,
does not save their claim. See Wright at *17 (noting that while
"plaintiffs vaguely aver that 'further incidents' of bullying

took place," "plaintiffs have not alleged any facts about these events or incidents to show that they involved harassment qualitatively similar to [the incident when R.W. was assaulted])."  The Court readily acknowledges that an allegation that the harasser was a teacher or a school support person, and not just another student, significantly raises the potential severity and pervasiveness of the interaction.  Nonetheless, the only interaction alleged with any detail remains a single incident of brief duration.[14]

### C. Title VI Claim

Section 601 of Title VI provides that: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  42 U.S.C. § 2000d.  The statute defines "program or activity" to include a "local educational agency," which is "a public board of education or other public authority legally constituted within a State for either administrative control or direction of, or to perform a service function for, public elementary schools or secondary schools in a city, county, township, school district,

---

[14] The Court also notes that Principal Rider's offer to move K.S. to another classroom, away from Jones and C.G. and presumably Mitchell, undermines the conclusion that the school system was deliberately indifferent to the harassment.

or other political subdivision of a State . . . ."  42 U.S.C. §
2000d-4a(2)(B); 20 U.S.C. § 7801(26)(A).  Defendant Board[15] moves
to dismiss the Title VI claim: (1) on the ground that Plaintiffs
have failed to sufficiently pinpoint the timing of the Board's
receipt of federal funds so as to trigger its obligations under
the statute; and (2) on the ground that Plaintiffs have failed
to allege intentional discrimination based on race.  Because the
Court agrees with the second ground, it need not reach the
first.

As with Plaintiffs' other claims, the basis for their Title
VI claim is somewhat unclear and appears to have shifted between
the filing of the Amended Complaint and the submission of their
Opposition.  In Count IV of the Amended Complaint, Plaintiffs
focus almost exclusively on Defendant Mitchell and allege that
they were "targeted and harassed by David Mitchell on the basis
of their race," Am. Compl. ¶ 103, and that the Board had notice
that "Mitchell's harassment of K.S. was based on race," but
failed to investigate or respond to that racial harassment.  Id.
¶¶ 104-106.  In opposing the motion to dismiss, Plaintiffs make
the following factual argument:

> Shirille (sic) Jones discriminated against K.S., the
> only white child in her class.  She allowed C.G., an
> African-American, to buloly (sic) K.S. and then put
> K.S. in the support room when K.S. attempted to

---

[15] There is no dispute that a Title VI claim cannot be brought
against the Individual Defendants.

> retaliate.  The Board knew about Ms. Jones' actions
> through Principal Rider.  The Board was obligated to
> stop the discrimination and is liable for the actions
> of Mr. Mitchell.

ECF No. 30-1 at 17.  Thus, the focus now seems to be more on

Defendant Jones, which perhaps is consistent with Plaintiffs'

current position that Mitchell's conduct was motivated solely by

K.S.'s disability.  Regardless of the current focus, the Court

finds that Plaintiffs have failed to allege intentional

discrimination just as they failed to establish that element in

support of their § 1983 claim.

## IV. CONCLUSION

For the above stated reasons, Defendants' motion will be

granted.  A separate order will issue.


_____/s/_____
William M. Nickerson
Senior United States District Judge


DATED: March 24, 2014